

FILED

MAY 2 2 2019

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JOHN W. COLLIER, | Cause No. CV 15-79-BLG-SPW-TJC |
| Petitioner, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| STATE OF MONTANA, | |
| Respondent. | |

This matter comes before the Court on Petitioner, John W. Collier's, application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Collier is a state prisoner represented by counsel.

## I.    Procedural History

In May of 2002, Collier was convicted of one count of Incest following a jury trial in Montana's Fourteenth Judicial District, Musselshell County. On November 1, 2002, Collier was sentenced to fifty years in the Montana State Prison with all but twenty of the years suspended. *See*, Judg. (Doc. 11-20 at 1-2).

Following his conviction, Collier filed a direct appeal and raised five separate claims. Pertinent to the petition at hand, Collier argued his trial counsel was ineffective for failing to present testimony at sentencing regarding Collier's

1

alleged cognitive impairment.  Because no such testimony was presented at sentencing, Collier argued that he was sentenced more harshly than was appropriate.  (Doc. 11-21 at 23-24.)  In support of his argument, Collier attached a copy of a Wechsler Intelligence test administered to him in 1976, (*id.* at 32-33), and a Special Services Skills Assessment from the Salish Kootenai College for the 1986-87 academic year.  *Id.* at 34-35.  Apparently, neither of these documents were provided to the state district court during Collier's criminal proceedings.  The Montana Supreme Court determined the claim of ineffective assistance of counsel was not appropriate for direct appeal because it would require consideration of factual matters that were not contained in the district court record.  But the Court noted the issue could properly be raised in a postconviction proceeding.  *State v. J.C.*, 2004 MT 75, ¶¶ 26-27, 320 Mont. 411, 87 P. 3d 501.

In November of 2004, Collier filed a *pro se* petition for state habeas relief in the Montana Supreme Court.  (Doc. 11-24).[1]  Among the issues raised by Collier, he argued that trial counsel failed to mention his cognitive disability, and his inability to fully comprehend and understand the psychosexual evaluation and presentence investigation and the questions that were asked of him during these interviews.  *Id.* at 15.  Collier further contended trial counsel was not present

---

[1] In his petition, Collier noted he was pursing all avenues for fear deadlines would not be met in time.  It appears this consideration also contemplated potential federal review of Collier's conviction.  (Doc. 11-24 at 14-15.)

during either interview, and he was prejudiced by counsel's absence. *Id.* Collier argued that he lacked the requisite mental capacity to complete the sexual offender program (SOP) at prison and should be allowed to complete the program in an outpatient setting. *Id.* at 15-16. Collier stated he was prejudiced by counsel's failure to raise these issues during his sentencing hearing, thus depriving him of due process of law. *Id.* at 16. It appears Collier prepared this document with the assistance of another inmate. *Id.* at 18-19; *see also* (Doc. 11-26 at 1-2)(both documents stating habeas petition drafted by Jeffry John Lout).

The Montana Supreme Court denied Collier's petition on January 25, 2005. The Court determined that his claims constituted "collateral attacks on the validity of his sentence," and were not proper for habeas proceedings. (Doc. 11-28 at 1); *Collier v. State*, No. 04-864, Or. at 1 (Mont. Jan. 25, 2005). The Court noted, however, that Collier might be able to seek relief in a postconviction proceeding. *Id.* at 1-2. The Court further directed the Clerk of Court to forward a copy of Collier's petition to the Fourteenth Judicial District Court, and instructed that the petition be filed in the district court as a petition for postconviction relief. *Id.* at 2, ¶ 2.

Following the directive from the Montana Supreme Court, the district court opened a postconviction matter and appointed counsel, John Bohlman, to represent Collier on March 10, 2005. (Doc. 11-30.) The district court noted the criminal

3

proceedings did not address Collier's mental capacity, and found the allegation that Collier was unable to fully appreciate all of his circumstances was a serious one. *Id.* at 1-2.

Bohlman then filed a petition for postconviction relief on Collier's behalf. (Doc. 11-31.)  The petition asserted Collier was unable to comprehend the trial court proceedings and assist in his defense, trial counsel was ineffective, and an unduly harsh sentence was imposed in light of the Collier's mental deficiency. Specifically, the petition asserted Collier had a diminished mental capacity, and trial counsel should have moved for an examination of Collier's developmental disability to determine his fitness to proceed. *Id.* at 3.  Collier also alleged trial counsel was ineffective for not presenting evidence relative to Collier's diminished mental capacity at sentencing.  *Id.* at 4.  Collier further asserted the presentence investigation report was incomplete because it did not consider or report Collier's diminished mental capacity.  Therefore, the report did not adequately address Collier's "circumstances, characteristics, needs, [or] potentialities."  *Id.* Additionally, Collier asserted he lacked the mental capacity to complete SOP while in prison.  *Id.* at 4-5.

Collier requested that he be evaluated pursuant to Mont. Code Ann. §46-14-202,[2] regarding his "fitness to proceed," and if Collier were found not fit, Collier

---

[2] MCA § 46-14-202 provides that the defense, court, or prosecution may request an

asked to "be dealt with as if he had not been sentenced." *Id.* at 5-6. If found to have been able to assist in his own defense, Collier asked the district court to consider the updated evaluation and whether or not adjustments to his sentence were warranted. *Id.* at 6. Following a response from the State, the district court ordered further proceedings. (Doc. 11-35.)

On September 1, 2005, the parties filed a "Stipulation and Statement of Matters at Issue." (Doc. 11-41.) The stipulation called for Collier to be examined by a psychiatrist or clinical psychologist of his choosing who was familiar with the sexual offender programs offered at the Montana State Prison. *Id.* at 1. The evaluator would assess Collier's fitness to proceed. If Collier were found not to be fit, he would be dealt with as if he had not been sentenced. But if he was found to be fit, the court was to consider the degree of mental disability and determine whether adjustments to the sentence were warranted. *Id.* at 1-2. The parties contemplated that perhaps Collier be allowed to complete a different version of SOP. *Id.* at 2.

On November 23, 2005, a subsequent Stipulation was entered by the parties, which identified Michael J. Scolatti, Ph.D. as the evaluator for the defendant. Robert Page, LCPC, was also identified as an evaluator in the event that a second

---

examination of a defendant if his or her fitness to proceed is at issue. Upon motion or request, the court shall appoint a licensed professional to "examine and report upon the defendant's mental condition."

evaluation was necessary or was requested by the State. (Doc. 11-43 at 2.) On December 14, 2005, the district court filed the stipulation and ordered that the evaluation occur as outlined by the parties. *See e.g.* (Doc. 1-16 at 12, Doc. Seq. 151); (Doc. 11-44.)

The order for evaluation was the last substantive entry in the district court docket until 2011.[3] On January 4, 2011, the district court received a letter from Collier inquiring into the status of his case and indicating that the evaluation ordered in 2005 had never taken place. (Doc. 11-46 at 1.) The letter also explained Collier had received word from the Office of the State Public Defender (OPD) that Mr. Bohlman had retired from the practice of law and moved to Japan. *Id.*[4] The letter asked the court to provide clarification as to the status of the case and require that the parties comply with previous court orders, including the transfer of Collier to Warm Springs for an evaluation. *Id.* at 1-2.

---

[3] In February of 2008, Collier sent a motion/letter to the district court inquiring into the possibility of a reduction of his monthly restitution obligation. (Doc. 11-45.) It does not appear the court took any action in response to this request. *See*, district court docket (Doc. 1-16 at 12, Doc. Seq. 152-153.)

[4] Collier apparently wrote to the OPD on May 17, 2010, inquiring into the status of his case because he wanted to "pursue federal appeals" and advising he had been unable to contact Mr. Bohlman. *See,* (Doc. 11-49 at 4.) On June 4, 2010, an administrative assistant from the OPD responded, advising Collier that Bohlman had spent 1-2 years in Japan, but may have since returned to the Billings area. Collier was also apparently provided several documents from his district court case which he had requested. (Doc. 1-9.) On June 13, 2010, Collier sent an additional letter and thanked the OPD for the response. (Doc. 11-49 at 4.)

The district court immediately issued an order to the parties requiring both the State and the OPD to show cause as to what had transpired. (Doc. 11-47.) At this point in time, neither of the attorneys who had been involved in Collier's 2005 postconviction proceedings, Bohlman, or Musselshell County Attorney, Stacy Maloney, were practicing law in the area. *See e.g.,* (Doc. 11-48 at 2: 23-26.)

On March 9, 2011, Kent Sipe, the Musselshell County Attorney responded to the district court's order and explained that Collier had misled the court, and that he had, in fact, been evaluated in June of 2006 by Dr. Scolatti. *Id.* at 3; *see also,* (Doc. 12-3)(Scolatti Evaluation). Apparently, based upon what was perceived as an unfavorable evaluation from Dr. Scolatti, Bohlman had informed the Musselshell County Attorney's Office that he intended to file a motion to withdraw the postconviction petition. (Doc. 11-48 at 3-4.) This information was gleaned from e-mails exchanged between Bohlman and Karen Lekse, an administrative assistant in the Musselshell County Attorney's office, (*id.* at 6-7), and a handwritten note, purportedly authored by Ms. Lekse, stating "John has indicated he will file a motion to withdraw the petition for postconviction relief" which was attached to the County Attorney's file. *Id.* at 8.

The OPD also responded and represented that even if a postconviction hearing was granted to Collier, the Scolatti evaluation would not be helpful to Collier. Specifically, the OPD stated:

7

> This evaluation would not suggest the defendant was unfit to proceed. It would not suggest that he suffered a mental disease or defect that would raise the issue that he was guilty but should receive a sentence to [the Department of Health and Human Services] rather than the sentence he has already been given. The evaluation would not suggest that he did not have the requisite mental state in order to be convicted of the offense he was found guilty of. In other words, the evaluation would not help him.

(Doc. 11-51 at 2.) Further, the OPD represented that it would be folly for Collier, through counsel, to admit the Scolatti evaluation to the district court because the evaluation would "do him more harm than good." *Id.* The OPD did not provide a copy of the report, and did not advise the district court that Dr. Scolatti reported Collier's full scale IQ to be 58, and that he was in the 2nd to 4th percentile in most areas of intellectual testing. (Doc. 12-3.)

The district court accepted the assertions made in the OPD response that the evaluation would not assist Collier. (Doc. 11-53 at 1.) The district court did not require any additional evidence from either party, but did acknowledge that both prior attorneys involved abandoned the case without notice. *Id.* On April 15, 2011, Collier's postconviction petition was dismissed with prejudice. *Id.* at 1-2.

On April 18, 2011, Collier filed an objection to the parties' recommendation for dismissal of his postconviction petition. *See* (doc. 11-52). He did not, however, file an appeal from the dismissal of his petition.

Over three years later, Collier filed a writ of habeas corpus with the Montana Supreme Court on June 3, 2014, alleging that the sentence imposed upon him by

the district court was facially invalid.  (Doc. 33-1.)  The Montana Supreme Court denied Collier's petition on June 17, 2014, finding the district court properly imposed conditions upon Collier's sentence and that the sentence he received was facially valid.  (Doc. 33-3.)

Collier then filed his current petition in this Court on June 10, 2015.  (Doc. 1 at 50).[5]

## II.    Collier's Claims

In his Amended Petition (Doc. 25) Collier alleges: (Claim 1) trial counsel was ineffective for failing to have Collier evaluated for fitness to proceed (*id.* at 13-17); (Claim 2) postconviction counsel was ineffective for failing to request Dr. Scolatti evaluate Collier in accordance with the district court's order (*id.* at 17-19); and, (Claim 3) postconviction counsel was ineffective for abandoning Collier's case. *Id.* at 19-20.

## III.    Analysis

As set forth below, Claims 2 and 3 are not cognizable in federal habeas and should be denied.  As to his claim of ineffective assistance of trial counsel, the claim is facially barred by the one-year limitations period in 28 U.S.C. § 2244.  But an evidentiary hearing is necessary to determine whether equitable tolling of the

---

[5] *See, Houston v. Lack*, 487 U.S. 266 (1988)(prisoner's federal habeas petition deemed filed when it is delivered to prison authorities for mailing to the district court).

statute of limitations is appropriate.

### A. Claims 2 and 3 – Performance of Postconviction Counsel

As to Collier's purported ineffective assistance of postconviction counsel,

these claims simply are not cognizable in federal habeas proceedings, as there is no

federal constitutional right to counsel for indigent prisoners seeking state

postconviction relief:

> Postconviction relief is even further removed from the criminal trial than is
> discretionary direct review.  It is not part of the criminal proceeding itself,
> and it is in fact considered to be civil in nature.  *See Fay v. Noia*, 372 U.S.
> 391, 423-24 (1963)…States have no obligation to provide this avenue of
> relief, cf. *United States v. MacCollom*, 426 U.S. 317, 323 (1976)(plurality
> opinion), and when they do, the fundamental fairness mandated by the Due
> Process Clause does not require that the state supply a lawyer as well.

*Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987); see also *Bonin v. Vasquez*,

999 F. 2d 425, 430 (9th Cir. 1993).  Further, relief is precluded by statute.  *See*, 28

U.S.C. § 2254(i) (providing "ineffectiveness or incompetence of counsel during

Federal or State collateral post-conviction proceedings shall not be a ground for

relief in a proceeding arising under section 2254.")  Accordingly, Collier's Claims

2 and 3, alleging ineffective assistance of postconviction counsel, should be

denied.

### B. Claim 1 – Ineffective Assistance of Trial Counsel

With respect to Collier's claim of ineffective assistance of trial counsel,

Respondent argues in its answer that the claim is both time-barred and

procedurally defaulted. (Doc. 33 at 15-38.) Counsel for Collier elected not to file

a reply to the Respondent's Answer. (Doc. 40.) Thus, Respondent's analysis of

both the statute of limitations and procedural default defense is largely

unchallenged. Nevertheless, additional factual development of the record and a

hearing are necessary to determine the applicability of these defenses.

### 1. Untimeliness of Petition

A one-year limitations period applies to petitions filed by state prisoners

under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244. The purpose of this timeline is to

"encourage prompt filings in federal court in order to protect the federal system

from being forced to hear stale claims." *Carey v. Saffold*, 536 U.S. 214, 226

(2002).

Absent a reason to apply one of the other "trigger" dates in 28 U.S.C.

§ 2244(d)(1),[6] Collier's federal petition had to be filed within one year of the date

his conviction became final. 28 U.S.C. § 2244(d)(1)(A). On March 30, 2004, the

Montana Supreme Court confirmed Collier's conviction. Collier did not petition

---

[6] The limitations period under 2244(d)(1) is triggered and begins to run from the
latest of: (A) the date on which the underlying judgment became final through
either the conclusion of direct review or the expiration of the time for seeking such
review; (B) the date on which any impediment to the filing of a federal petition
created by unconstitutional state action is removed; (C) the date on which a newly
recognized and retroactively applicable constitutional right was first recognized by
the United States Supreme Court; or (D) the date on which the factual predicate
underlying a claim could have been discovered through the exercise of due
diligence. 28 U.S.C. § 2244(d)(1)(A)-(D).

for a writ of certiorari. Therefore, review on direct appeal was complete when the 90-day period for seeking such review concluded. *Bowen v. Roe*, 188 F. 3d 1157, 1159 (9th Cir. 1999); 28 U.S.C. § 2244(d)(1)(A). Thus, Collier's judgment became final on June 28, 2004.

The one-year limitations period is subject to statutory tolling during the time in which a "properly filed" application for post-conviction or other collateral relief is pending in the state court. 28 U.S.C. § 2244(d)(2); *Nino v. Galaza*, 183 F. 3d 1003, 1006 (9th Cir. 1999). Collier filed his petition for habeas relief with the Montana Supreme Court on December 23, 2004. See, (Doc. 11-24.) Between Collier's judgment becoming final and the filing of his state habeas petition, 178 days had elapsed on Collier's federal filing time clock. The filing of the state petition tolled the federal limitations statute.[7] As set forth above, the Montana Supreme Court denied Collier's habeas petition, but directed that the document be filed in the state district court as a postconviction petition. (Doc. 11-28.) Further, the Court advised the district court to treat the petition as if it had been filed on December 23, 2004. *Id.* at 2, ¶ 2.

As discussed above, Collier's postconviction petition was not dismissed

---

[7] Thus, at the time of the filing of the state habeas petition, and subsequently the state postconviction petition, Collier had 187 days remaining in which to timely file his federal petition.

until April 15, 2011. (Doc. 11-53.) Collier did not appeal the denial of his petition. Thus, with 187 days remaining on Collier's federal timeclock, he should have filed his federal petition on or before Wednesday, October 19, 2011. But Collier did not file in this Court until June 10, 2015, over three and a half years after the expiration of the filing period.[8] The present petition is untimely; Collier has acknowledged that he must demonstrate he is entitled to equitable tolling of the limitations period for his petition to proceed. (Doc. 25 at 8.)

### a. Equitable Tolling

"[A] petitioner is 'entitled to equitable tolling' only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)); see also *Miles v. Prunty,* 187 F. 3d 1104, 1107 (9th Cir. 1999)("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate.") The petitioner bears the burden of showing that this "extraordinary

---

[8] Collier also filed a subsequent state habeas petition, but he is not entitled to statutory tolling. The state petition cannot toll the limitation period because it was filed after the filing deadline had already passed. *See, Ferguson v. Palmateer,* 321 F. 3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed). *See also, Jiminez v. Rice,* 276 F. 3d 478, 482 (9th Cir. 2001).

exclusion" should apply and the requirements are "very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F. 3d 1963, 1065-66 (9th Cir. 2002); see also *Waldron Ramsey v. Pacholke*, 556 F. 3d 1008, 1011 (9th Cir. 2009)(characterizing the Circuit's application of equitable tolling doctrine as "sparing" and a "rarity.")  Additionally, a petitioner must establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. *Bryant v. Arizona Attorney General*, 499 F. 3d 1056, 1060 (9th Cir. 2007).

Collier asserts that the abandonment by his postconviction attorney, coupled with his "obvious competency issues," amount to extraordinary circumstances beyond his control and, accordingly, should entitle him to equitable tolling. (Doc. 25 at 8-9.)

Cognitive impairments may provide a basis for equitable tolling if the impairment caused the untimely filing. *Stipsyn*, 345 F. 3d at 799.  The Ninth Circuit has established a two-part test:

(1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, by demonstrating the impairment was so severe that either

    a. petitioner was unable rationally or factually to personally understand the need to timely file, or

    b. petitioner's mental state rendered him unable personally to prepare a habeas petition and to effectuate its filing.

    (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F. 3d 1092, 1099-1100 (9th Cir. 2010).

In evaluating a claim under this standard, "the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements." *Bills*, 628 F.3d at 1100–01 (9th Cir. 2010).

The record does contain evidence of a mental impairment. In his Amended Petition, Collier states that he has an IQ of 58.[9] (Doc. 25 at 15.) Collier's attorney states that she has "personally spoken with Mr. Collier, reviewed his PSR, and all other case documents including a letter written by him" and believes it is "hard to fathom why his trial counsel did not have him evaluated for competency." *Id.* at

---

[9] It appears that this number was gleaned from 1976 testing documents attached to Collier's brief on direct appeal. *See*, (Doc. 11-21)(appendix to Appellant's Brief).

16. The record also contains the "Intellectual/Cognitive Assessment" conducted by Dr. Scolatti in 2006, as well as additional intelligence testing and a skills assessment conducted in 1987. (Docs. 12-3, and 11-21 at 32-35.)  But the record does not contain any evidence to establish a causal connection between Collier's mental impairment and his failure to timely file, or to determine whether he was otherwise diligent in attempting to comply with the filing requirements.

The Ninth Circuit has established that a court must not deny a request for equitable tolling without adequate development of the factual record. *Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003).  In *Laws*, the district court denied equitable tolling because the record did not show that it was impossible for the petitioner to meet the filing requirements.  The Ninth Circuit reversed, finding the petitioner was not required at the pleadings stage to "carry a burden of persuasion . . . to merit further investigation into the merits of his argument for tolling." *Id.* Rather, there only need be "'circumstances consistent with petitioner's petition . . . under which he would be entitled to a finding of an 'impediment' under § 2244(d)(1)(B) or to equitable tolling' for further factual development to be required." *Id*, quoting *Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc).  The Court found the district court "erred in granting judgment against [petitioner] based upon the papers then before it.  It is enough that [petitioner] 'alleged mental incompetency' . . . in a verified pleading."

16

*Id* (internal citations omitted.)

As in *Laws,* it cannot be determined at this juncture whether Collier was unable to meeting the filing requirements because of a mental impairment. Additional factual development is required. Therefore, the Court will conduct an evidentiary hearing to determine whether equitable tolling is appropriate in this case based upon Collier's alleged mental impairment.

### 2. Exhaustion/Procedural Default

Before a state prisoner may present a claim to a federal court, he must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement prevents the federal court from "upset[ting] a state court conviction" without first allowing the state courts an "opportunity to…correct a constitutional violation." *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be

procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Even if a petitioner's claim is procedurally defaulted, however, a federal district court may still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court, *Schlup v. Delo*, 513 U.S. 298, 329 (1995); or (2) a showing of adequate legal cause for the default and prejudice arising from the default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Collier does not assert actual innocence, thus Collier must demonstrate cause and prejudice to excuse the default.

### a. Cause and Prejudice

A petitioner may overcome the prohibition on reviewing procedurally defaulted claims if he is able to show "cause" to excuse his failure to comply with the state procedural rule and "actual prejudice resulting from the alleged constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). In order to establish cause for a default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A factor is external to the petitioner if it "cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the

18

errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

As discussed above, a petitioner does not have a federal constitutional right to effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987).  Accordingly, in *Coleman*, the Court held that attorney error committed in the course of postconviction proceedings cannot supply cause to excuse a default that occurs in course of those proceedings.  501 U.S. at 755.  But *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), established a limited exception to this general rule.  *Martinez* held that inadequate assistance of postconviction counsel or lack of counsel at initial-review collateral proceedings "may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  132 S. Ct. at 1315.  The requirements for the exception were later summarized by the Supreme Court in *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) as follows: "(1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law

requires that an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding." Quoting *Martinez*, 132 S.Ct., at 1318–1319, 1320–1321.

As noted above, Collier did not submit a reply to the Respondent's argument on procedural default. At the evidentiary hearing to be held on the issue of equitable tolling, counsel shall also be prepared to argue the applicability of the *Martinez/Trevino* exception to this case.

Based on the foregoing, the Court enters the following:

### ORDER

A telephonic conference shall be held on May 29, 2019 at 11:00 a.m. for the purpose of setting an evidentiary hearing on the issue of equitable tolling. Counsel shall confer prior to the conference to discuss potential dates for the hearing. The Court intends to set a firm date for the hearing within 60 days. Lead counsel for the respective parties are required to participate in the conference. Counsel shall use the Court's conferencing system:

      a.   Dial 1-877-848-7030

      b.  Enter Access Code 5492555 #

### RECOMMENDATION

It is further recommended that Claims 2 and 3 of the Amended Petition (Doc. 25) should be DISMISSED with prejudice as not cognizable in federal

habeas.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Collier may object to this Findings and Recommendation within 14 days. 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Collier must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 22nd day of May, 2019.

/s/ Timothy J. Cavan
Timothy J. Cavan
United States Magistrate Judge